DECISION AND JUDGMENT ENTRY
Appellant Robert W. Haynes appeals the decision of the Ross County Court of Common Pleas denying his claim to quiet title to real property situated along the Little Salt Creek in Jefferson Township, Ross County, Ohio. He raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE JUDGMENT AND FINAL ORDER IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 SECOND ASSIGNMENT OF ERROR
THE JUDGMENT AND FINAL ORDER IS CONTRARY TO LAW.
We affirm the decision of the trial court because the evidence relied on by the court was sufficient to support a determination that appellant's property does not include land on the west bank of the Little Salt Creek. However, we conclude the trial court improperly applied the law in determining that the boundary line is the center of the creek, and thus sustain the second assignment of error.
This action to quiet title was brought by appellant in order to determine the ownership of a small parcel of property located on the west side of Little Salt Creek, Jefferson Township, Ross County, Ohio. Although not definitely confirmed through exact measurements, the parcel in dispute appears to be an area of about ¼ to ½ an acre.
Appellees are the owners of approximately 64.121 acres of real property on the west side of the creek. Appellant owns approximately 32.3351 acres of property located on the east side of Little Salt Creek. In other words, appellees and appellant are adjacent landowners. Neither appellant's nor appellees' deed described their property in metes and bounds. Appellant's deed, which originated in 1854, describes the property as:
 The Northeast Quarter of the Southeast Quarter of Section Number One (1), Township Number Seven (7), Range Number Twenty (20), and beginning at the Northeast corner of the aforesaid Quarter-Quarter; thence West to the west bank of the south fork of Salt Creek, at low water mark; thence up said creek to a ditch; thence with said ditch til (sic) it strikes said creek; thence with the creek to the lands of Adam Sigler; thence East to the Jackson County line; thence North to the place of beginning and containing 37 acres, more or less.
A magistrate heard the evidence, which consisted of the conflicting testimony of three surveyors. The issue in debate was the part of the appellant's deed that refers to a ditch. The description does not indicate on which side of the creek the ditch is located. Appellant's two surveyors testified that after examination of the property, they observed a "depression" in the land on the west side of the creek, and each concluded that this "depression" was apparently the ditch referred to in the deed. Appellees' surveyor, Michael Slagle, testified that he was not able to ascertain whether the "depression" currently along the creek was the same ditch referenced in the deed from 1854, when the description was first created. Slagle placed the boundary line between the adjoining properties at the center of Little Salt Creek, relying, in part, on the description in the deed of appellees' predecessors in title, which stated:
 Beginning 11 rods west of Ross County and Jackson County line at the intersection of Ollie J. Rucker, Maynard Thomas, and Clinton Graves farms, at the center of Little Salt Creek; thence due west along Graves and Rucker fence line 72 rods to a corner post; thence due south along said fence 70 ½ rods to corner fence post; thence due west to an old rail fence 37 rods to corner; thence along said rail fence and due North 131 rods to corner post and Otis Triplett land; thence due east along fence line 44 rods to corner with Homer Clark land and Little Salt Creek; thence up Little Salt Creek in a Southerly direction 250 ½ rods to place of beginning; CONTAINING 65 acres, more or less.
The magistrate viewed the property and indicated that the ditch was no longer identifiable. Therefore, the magistrate concluded that:
 The attempted reconstruction of the ditch location is lease (sic) certain and more likely to be mistaken.
 The center of Salt Creek is a more definite, certain and fixed boundary.
The trial court adopted the findings of fact and conclusions of law made by the magistrate. The court entered judgment, approving the magistrate's recommendations in favor of the appellee, i.e. the center of Salt Creek constitutes the common boundary. Appellant filed this appeal.
A reviewing court will not disturb the judgment of the trial court as being against the manifest weight of the evidence provided the decision is supported by some "competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St. 279, 376 N.E.2d 578, syllabus. See, also, CraneHollow, Inc. v. Marathon Ashland Pipe Line, LLC (2000), 138 Ohio App.3d 57,66, 740 N.E.2d 328, 334. In reviewing the decision, we must make every reasonable presumption in favor of the trial court's findings of fact.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276.
In this case, we are dealing with a boundary dispute between adjoining landowners. The Ohio Administrative Code sets out guidelines that are to be the "basis for all surveys relating to the establishment or retracement of property boundaries in the state of Ohio." Ohio Adm. Code4733-37-01. In addition, the Code states:
 When the deed description of the subject property and the deed description of adjoining properties do not resolve the unique locations of the corners and lines of the property being surveyed, the surveyor shall consult other sources of information in order to assemble the best possible set of written evidence of every corner and line of the property being surveyed. Ohio Adm. Code 4733-37-02(A). After all necessary written documents have been analyzed, the survey shall be based on a field investigation of the property. The surveyor shall make a thorough search for physical monuments * * * and confer with the owner(s) of the property being surveyed. In addition, the surveyor shall, when necessary, confer with the owner(s) of the adjoining property and take statements. Ohio Adm. Code 4733-37-02(B).
After concluding that the description in appellant's deed was ambiguous, the surveyors who testified before the magistrate appear to have properly collected additional information. This included observing the site and attempting to retrace the description contained in the deed. However, differing opinions arose as to the actual existence of the ditch described in appellant's deed.
When determining boundary disputes, monuments are of prime importance.Broadsword v. Kauer (1954), 161 Ohio St. 524, 533, 120 N.E.2d 111, 116. The general rule is that:
 A `monument' is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purposes of of determining the location of a boundary, even though this means either the shortening or lengthening of distance, unless the result would be absurd and one clearly not intended, or all of the facts and circumstances show that the call for course and distance is more reliable than the call for monuments. Id. at 533-534, 120 N.E.2d 111, 116, quoting 6 Thompson on Real Property (Perm. Ed.), 519, Section 3327.
When reviewing the evidence involved in a boundary dispute, courts should first consider natural and permanent monuments. To be considered next are natural boundaries, followed by artificial marks, adjacent boundaries, course and distance, with course controlling distance. Area is the least important consideration. Id. See, also, Owens v. Haunert
(2000), 137 Ohio App.3d 507, 515, 739 N.E.2d 5, 10; 2 Ohio Jurisprudence 3d, Adjoining Landowners, Section 70.
The ditch referred to in appellant's description would indeed be considered a natural monument, and as such, would control the boundary line dispute. However, there remains a disagreement as to whether the ditch from 1854 can be identified today and still be considered a monument. First, the description in appellant's deed does not state on which side of the creek the ditch is located. Second, while the "depression" in the land observed by appellant's two surveyors may be a remnant from the ditch, that fact remains questionable. Appellees' surveyor testified that he did observe the "depression" in the land, but that he was not confident, considering the changes that occur in the flow of a river over time, that this was the same ditch referred to in the deed. In addition, after personally observing the property, the magistrate concluded the ditch was no longer identifiable. Based on these facts, it is clear that no one could conclude with any amount of certainty whether the ditch still remained.
Upon review, we find that there was competent, credible evidence to support the conclusion that the ditch referred to in appellant's deed description was no longer identifiable, and thus, could not govern the boundary dispute in this case. While the appellant complains of "an overwhelming weakness in the reasoning of Surveyor Slagle" (appellees' witness), we remind the appellant that credibility determinations are for the trier of fact, not this court. We, therefore, overrule appellant's first assignment of error.
In his second assignment of error, appellant contends that the judgment of the trial court is contrary to law. Under Ohio law, as well as under the common law, "owners of lands situate on the banks of navigable streams running through [Ohio], are also owners of the beds of the rivers to the middle of the stream." Admr's. of Gavit v. Chambers and Coats
(1828), 3 Ohio 495, syllabus. See, also, State ex rel. Brown v. NewportConcrete Co. (1975), 44 Ohio App.2d 121, 123, 336 N.E.2d 453, 455
(holding that "the title of lands bordering on a navigable stream extends to the middle of the stream."); State ex rel. the Andersons v. Preston
(1963), 2 Ohio App.2d 244, 247, 207 N.E.2d 664, 666. Of course, this rule applies where there is no express reference or grant beyond the boundary of the near bank. Where there is an express grant that goes beyond the near bank, the unambiguous language of the deed must be given effect, absent some other rule of law being applicable. Hinman v. Barnes (1946),146 Ohio St. 497, 507, 66 N.E.2d 911, 916. See, also, McCarley v. O.O.McIntyre Park Dist. (Feb. 11, 2000), Gallia App. No. 99CA07, unreported; 1 Curry and Durham, Ohio Real Property Law and Practice (5 Ed. 1996) 296, Section 8-1(a).
Here the appellees' deed conforms to the common law rule and expressly grants title to the middle of the stream. However, the appellant's deed expressly grants title to the low water mark of the far bank, i.e. the west bank. This express grant creates a conflict that cannot be resolved by simply applying the common law rule of Admr's of Gavit, supra, to render that grant nugatory. Accordingly, we remand the matter to the trial court for a determination of which deed should control by virtue of an examination of the respective chains of title. Absent the application of some other equitable or legal theory, that determination should be based upon which description first appears of record. The appellant's second assignment of error is sustained.
 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J. Concur in Judgment and Opinion.